No. 23-3404

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

DEIDRE PARKER,

APPELLANT,

V.

UNITED STATES OF AMERICA, UNITED STATES DEPARTMENT OF
AGRICULTURE, AND THOMAS J. VILSACK, SECRETARY OF
AGRICULTURE,

APPELLEES.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI, WESTERN DIVISION

BEFORE THE HONORABLE FERNANDO J. GAITAN, JR.,
SENIOR U.S. DISTRICT JUDGE

# BRIEF FOR APPELLEE THOMAS J. VILSACK, SECRETARY OF AGRICULTURE

TERESA A. MOORE
UNITED STATES ATTORNEY

JEFFREY P. RAY
FIRST ASSISTANT UNITED STATES ATTORNEY
CHIEF, CIVIL DIVISION

UNITED STATES ATTORNEY'S OFFICE FOR
THE WESTERN DISTRICT OF MISSOURI

CHARLES E. WHITTAKER COURTHOUSE
400 EAST NINTH STREET, SUITE 5510
KANSAS CITY, MO 64106-2149

ATTORNEYS FOR APPELLEE

# I. Summary of the case

Appellant herein and plaintiff below, Deidre Parker ("Parker"), seeks damages based on allegations that she was subjected to discrimination/retaliation while working for a component of the U.S. Department of Agriculture ("USDA"). The district court below,[1] in an unreported decision,[2] granted the USDA's summary judgment motion on all issues, finding that Parker failed to establish: (1) *prima facie* cases of race or gender discrimination or retaliation with regard to her allegations of discrete acts by the USDA, (2) the conduct of which she complained was sufficiently severe so as to show a hostile work environment, and (3) her working conditions were intolerable so as to show constructive discharge. Parker appeals the final judgment entered based on the district court's summary judgment ruling.

This appeal does not present unusual or unresolved issues regarding federal employment discrimination law. Moreover, this appeal does not involve a substantive matter of first impression in this Circuit, nor raise significant legal matters wherein there is a split of authority among the federal Circuits. As such, the USDA is prepared to waive oral argument from the parties.

---

[1] The Honorable Fernando J. Gaitan, Senior U.S. District Judge, United States District Court for the Western District of Missouri.

[2] *Parker v. United States*, 2023 WL 9228181, slip op. (W.D. Mo. Aug. 29, 2023)

i

# II. Table of contents

Page

I.     Summary of the case ...................................................................i

II.    Table of contents ......................................................................ii

III.   Table of authorities .................................................................v

       A.     Cases ............................................................................v

       B.     Statutes.........................................................................ix

       C.     Other authorities..........................................................x

IV.    Jurisdictional statement .........................................................1

V.     Statement of the issues ..........................................................3

VI.    Statement of the case.............................................................5

       A.     Facts .............................................................................5

              1.     Overview...........................................................5

              2.     Parker's May 29, 2015 settlement ....................6

              3.     Parker's 2017-18 employment discrimination claims..............7

                     a.     File management ...................................9

                     b.     Promotion denial ................................10

                     c.     Lack of work ......................................13

                     d.     Beacon Café interactions and the July 11, 2016 letter of counseling ...........................14

                     e.     Limited supervisor verbal communication for two weeks .......................................18

Appellate Case: 23-3404     Page: 3     Date Filed: 06/20/2024 Entry ID: 5404987

# II.   Table of contents

Page

       f.     Co-employee complaints about Parker and the August 24, 2018 written counseling ........................ 19

       g.    The aborted FPS investigation ................................ 21

       h.    Parker's retirement ................................................ 23

  B.    Procedural history and relevant rulings ........................................ 25

VII.  Summary of the argument .................................................... 28

VIII.  Argument ....................................................................... 29

  A.    Standard of appellate review for Rule 56 motions ......................... 29

  B.    The district court ruled properly and did not err in limiting the scope of Parker's claims to allegations occurring after Parker settled a prior discrimination complaint in 2015 ................. 30

  C.    The district court ruled properly and did not err in entering summary judgment in favor of the USDA on Parker's claims of discrete acts of race and sex discrimination and retaliation in that the district court correctly found that Parker could not satisfy a *prima facie* case for race discrimination or sex discrimination or retaliation ......................................................... 33

  D.    The district court ruled properly and did not err in entering summary judgment in favor of the USDA on Parker's claims of a hostile work environment in that Parker failed to establish that her allegations of harassment were objectively severe ...................................................... 45

  E.    The district court ruled properly and did not err in entering summary judgment in favor of the USDA on Parker's claims of constructive discharge in that Parker failed to establish that her working conditions were objectively intolerable .............. 50

Appellate Case: 23-3404     Page: 4     Date Filed: 06/20/2024 Entry ID: 5404987

## II.   Table of contents

Page

IX.   Conclusion.......................................................................54

X.   Certificate of compliance......................................................55

XI.   Certification of electronic filing of the BRIEF FOR APPELLEE ...................56

XII.   Certification of mailing of paper copies of the BRIEF FOR APPELLEE ........57

Appellate Case: 23-3404     Page: 5     Date Filed: 06/20/2024 Entry ID: 5404987

# III. Table of authorities

## A. Cases

Page(s)

*Allen v. Purkett*, 5 F.3d 1151 (8th Cir. 1993) .............................................. 2 n.6

*Almond v. Boyles*, 612 F. Supp. 223 (E.D.N.C. 1985),
    *aff'd in part*, *vacated in part*, 792 F.2d 451 (4th Cir. 1986) ............ 12 n.17

*Altonen v. City of Minneapolis*, 487 F.3d 554 (8th Cir. 2007) ...................... 3, 38

*Anda v. Wickes Furniture Co.*, 517 F.3d 526 (8th Cir. 2008) ...................... 48, 51

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505 (1986) ............. 29

*Arraleh v. County of Ramsey*, 461 F.3d 967 (8th Cir. 2006) ........................... 50

*AuBuchon v. Geithner*, 743 F.3d 638 (8th Cir. 2014) ...................................... 53

*Avina v. Union Pac. R.R. Co.*, 72 F.4th 839 (8th Cir. 2023) ...................... 43-44

*Bell v. Baptist Health*, 60 F.4th 1198 (8th Cir. 2023) ..................................... 46

*Blake v. MJ Optical, Inc.*, 870 F.3d 820 (8th Cir. 2017) ............................. 4, 51

*Blomker v. Jewell*, 831 F.3d 1051 (8th Cir. 2016) .......................................... 49

*Bloodworth v. Kansas City Bd. of Police Commissioners*,
    89 F.4th 614 (8th Cir. 2023) ......................................................... 8 n.8

*Bradley v. Widnall*, 232 F.3d 626 (8th Cir 2000) ....................................... 3, 32

*Brown v. Coach Stores, Inc.*, 163 F.3d 706 (2d Cir. 1998) ...................... 42 n.27

*Brummett v. Taylor*, 569 F.3d 890 (8th Cir. 2009) ......................................... 42

*Butler v. Crittenden Cnty., Ark.*, 708 F.3d 1044 (8th Cir. 2013) ...................... 39

v

# A. Cases
## (*continued*)

Page(s)

*Carpenter v. Con-Way Cent. Express, Inc.*, 481 F.3d 611 (8th Cir. 2007) ..... 50-51

*Carter v. Atrium Hosp.*, 997 F.3d 803 (8th Cir. 2021) ..................................... 44

*Cavanaugh v. Wal-Mart Stores E., LP.*, 2024 WL 2094010,
slip op. (M.D. Pa. May 9, 2024) ................................................. 40 n.24

*City of Carthage, Mo. v. Union Pac. R.R. Co.*, 61 F.4th 565
(8th Cir. 2023) .................................................................. 29

*Clinton v. Garrett*, 49 F.4th 1132 (8th Cir. 2022) ..................................... 2 n.6

*Cosby v. Steak N Shake*, 804 F.3d 1242 (8th Cir. 2015) ............................... 4, 51

*Denn v. CSL Plasma, Inc.*, 816 F.3d 1027 (8th Cir. 2016) ............................. 29

*DePriest v. Milligan*, 823 F.3d 1179 (8th Cir. 2016) .................................... 35

*Du Bois v. Bd. of Reg. of the Univ. of Minn.*, 987 F.3d 1199
(8th Cir. 2021) .................................................................. 35

*Erenberg v. Methodist Hosp.*, 357 F.3d 787 (8th Cir. 2004) .................... 45 n.31

*Evers v. Alliant Techsystems, Inc.*, 241 F.3d 948 (8th Cir. 2001) ............. 47 n.33

*Faulkner v. Douglas Cty. Neb.*, 906 F.3d 728 (8th Cir. 2018) .......................... 35

*Flynn v. FCA US LLC*, 39 F.4th 946 (7th Cir. 2022) ................................... 8 n.8

*Gibson v. Concrete Equip. Co., Inc.*, 960 F.3d 1057 (8th Cir. 2020) ................ 37

*Green v. Brennan*, 578 U.S. 547, 136 S.Ct. 1769 (2016) ............................... 51

*Griffith v. City of Des Moines*, 387 F.3d 733 (8th Cir. 2004) ........................... 39

Appellate Case: 23-3404    Page: 7    Date Filed: 06/20/2024 Entry ID: 5404987

Page(s)

*Hales v. Casey's Marketing Co.*, 886 F.3d 730 (8th Cir. 2018) ..................... 3, 49

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 114 S.Ct. 367 (1993) ............... 49 n.34

*Heisler v. Nationwide Mut. Ins. Co.*, 931 F.3d 786 (8th Cir. 2019) ................... 34

*Hervey v. County of Koochiching*, 527 F.3d 711 (8th Cir. 2008) .................. 3, 48

*Jackman v. Fifth Jud. Dist. Dept. of Corr. Servs.*, 728 F.3d 800
    (8th Cir. 2013) ................................................................. 50

*Jones v. City of St. Louis*, Missouri, 825 F.3d 476 (8th Cir. 2016) ................... 38

*Jones v. Fitzgerald*, 285 F.3d 705 (8th Cir. 2002) ........................................... 38

*Kratzer v. Rockwell Collins, Inc.*, 398 F.3d 1040 (8th Cir. 2005) ............. 49 n.34

*LaCroix v. Sears, Roebuck, and Co.*, 240 F.3d 688 (8th Cir. 2001) .................. 36

*Liles v. C.S. McCrossan, Inc.*, 851 F.3d 810 (8th Cir. 2017) .................. 3, 48-49

*Mahler v. First Dakota Title Ltd. P'ship*, 931 F.3d 799
    (8th Cir. 2019) ...............................................................45, 49 n.34

*McConnell v. Anixter, Inc.*, 944 F.3d 985 (8th Cir. 2019) ............................... 37

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973) ....*passim*

*McNeil v. Union Pac. R.R. Co.*, 936 F.3d 786 (8th Cir. 2019) ......................... 39

*Michael v. Trevena*, 899 F.3d 528 (8th Cir. 2018) ......................................... 29

*Miller v. Coca-Cola Enterprises, Inc.*, 178 Fed. Appx. 583
    (8th Cir. 2006) ................................................................. 42

Appellate Case: 23-3404    Page: 8    Date Filed: 06/20/2024 Entry ID: 5404987

# A. Cases
# (*continued*)

Page(s)

*Missouri Dept. of Soc. Servs. v. Esper*, 2021 WL 1111170, slip op. (W.D. Mo. Feb. 24, 2021) ........................................................ 15 n.12

*Muldrow v. City of St. Louis, Missouri*, 144 S.Ct. 967 (2024) ....... 40, 40 n.24, 42

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061 (2002) ...............................................................................*passim*

*O'Brien v. Dept. of Agriculture*, 532 F.3d 805 (8th Cir. 2008) ......................... 51

*Palesch v. Missouri Comm'n on Hum. Rts.*, 233 F.3d 560 (8th Cir. 2000) .................................................................. 46

*Pennsylvania State Police v. Suders*, 542 U.S. 129, 124 S.Ct. 2342 (2004) ................................................................. 52

*Robinson v. Am. Red Cross*, 753 F.3d 749 (8th Cir. 2014) ............................... 39

*Shaver v. Independence Stave Co.*, 350 F.3d 716 (8th Cir. 2003) .................... 36

*Simonson v. Trinity Reg'l Health Sys.*, 336 F.3d 706 (8th Cir. 2003) ............. 3, 44

*Spears v. Mo. Dept. of Corr. & Hum. Res.*, 210 F.3d 850 (8th Cir. 2000) ...... 3, 36

*St. Mary's Hon. Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742 (1993) ................ 34

*State of Minn., Dept. of Jobs & Training v. Riley*, 18 F.3d 606 (8th Cir. 1994) ................................................................. 15

*Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) (*en banc*) ....................................................29 n.18, 32

*United States ex rel. Kraemer v. United Dairies, L.L.P.*, 82 F.4th 595 (8th Cir. 2023) ................................................................ 44 n.30

viii

## A. Cases
## (*continued*)

Page(s)

*United States ex rel. Miller v. Weston Educational, Inc.*, 840 F.3d 494
    (8th Cir. 2016) ........................................................................... 53 n.35

*United States v. Dunkel*, 927 F.2d 955 (7th Cir. 1991) ................................ 8 n.

*Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 108 S.Ct. 2777 (1988) .. 47 n.33

*Watson v. McDonough*, 996 F.3d 850 (8th Cir. 2021) ...........................3, 37, 39

*Wilkie v. Dept. of Health & Human Servs.*, 638 F.3d 944 (8th Cir. 2011) ...... 4, 52

*Williams v. Bradshaw*, 459 F.3d 846 (8th Cir. 2006) ................................... 2 n.6

*Wilson v. Ark. Dept. of Hum. Servs.*, 850 F.3d 368 (8th Cir. 2017) .................. 37

*Worthy v. McKesson Corp.*, 756 F.2d 1370 (8th Cir. 1985) ......................... 3, 32

*Ziegler v. 3M Co.*, 2024 WL 2733222, slip op. (8th Cir. May 28, 2024) .... 42 n.26

## B. Statutes

20 U.S.C. § 107 ............................................................................... 15 n.12

20 U.S.C. § 107a .............................................................................. 15 n.12

28 U.S.C. § 1291 ....................................................................................2

28 U.S.C. § 1294 ....................................................................................2

28 U.S.C. § 2017 ....................................................................................2

42 U.S.C. § 2000e-16(c) ................................................................... 1, 2 n.6

Appellate Case: 23-3404    Page: 10    Date Filed: 06/20/2024 Entry ID: 5404987

## C. Other authorities

Page(s)

8TH CIR. R. APP. P. 28A  ...................................................1 n.3, 56, 57, 57 n.37

*Business Enterprise Program*,
  https://dss.mo.gov/fsd/rsb/business-enterprise.htm  ..................... 16 n.13

FED. R. APP. P. 4  .............................................................................2

FED. R. APP. P. 25  ...........................................................................57

FED. R. APP. P. 28  ...........................................................................55

FED. R. APP. P. 32  ..............................................................55, 55 n.36

FED. R. APP. P. 43  .......................................................................1 n.3

FED. R. CIV. P. 25  ......................................................................1 n.3

FED. R. CIV. P. 56  ......................................................................*passim*

*Federal Protective Service*,
  https://www.dhs.gov/federal-protective-service  ..................................21

*General Service Administration: The Federal Government's Landlord*,
  38 REAL ESTATE REV. J., No. 1, art. 3 (Spring 2009)  ..................... 14 n.11

W.D. MO. LOC. R. 56.1(d)  ....................................................8 n.8

Appellate Case: 23-3404   Page: 11   Date Filed: 06/20/2024 Entry ID: 5404987

# IV.  Jurisdictional statement

On November 21, 2019, Parker – as the lone plaintiff – initiated this federal court action alleging employment discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. ("Title VII"), by filing a COMPLAINT, naming, among others, as defendant Sonny Perdue, in his then official capacity as the Secretary of Agriculture[2] ("USDA").  App.[I], at 1-11, R.Doc. 1, at 1-16.[3]  On April 6, 2021, Parker filed an AMENDED COMPLAINT, the operative pleading herein.  App.[II], at 299-318, R.Doc. 21, at 1-20.

On August 31, 2022, the USDA filed a motion seeking summary judgment on all claims in the AMENDED COMPLAINT. App.[II], at 401-35, R.Doc. 49, at i-xv, 1-20.  Following briefing, the district court entered an order on August 29, 2023, granting summary judgment to the USDA. App.[VII], at 1362-90, R.Doc. 63, at 1-29.  The same day, a CLERK'S JUDGMENT was filed.  R.Doc. 64, at 1.[4]

---

[2]     At the time the case was filed, Mr. Perdue was properly named as defendant.  Subsequently, Mr. Perdue was succeeded by Thomas J. Vilsack as the thirty-second Secretary of Agriculture in February of 2021.  Thus, Mr. Vilsack, in his official capacity, is the proper appellee herein. FED. R. CIV. P. 25(d).  *See also* FED. R. APP. P. 43(c)(2).

[3]     Citations to documents appearing in both the district court's CM/ECF docket and the consecutively paginated seven volumes of the APPENDIX filed with the Court by Parker are referenced with parallel citations to both sources (*e.g.*, "App.[—], at —, R.Doc. —, at —").  8TH CIR. R. APP. P. 28A(j).

[4]     The CLERK'S JUDGMENT is not included in Parker's APPENDIX.

1

Inasmuch as the defendant in the district court was a federal government actor, Parker had 60 days to file a timely notice of appeal from the entry of the aforementioned CLERK'S JUDGMENT.  28 U.S.C. § 2017(b)(3); FED. R. APP. P. 4(a)(1)(B)(iii).  On Monday, October 30, 2023 – the 62nd day after the entry of the CLERK'S JUDGMENT – Parker filed her NOTICE OF APPEAL.  App.[VII] at 1391-92-63, R.Doc. 65, at 1-2.  Because the NOTICE OF APPEAL was filed on the first business day following the 60th day, Parker's appeal is timely.  FED. R. APP. P. 26(a)(1).  This Court is invested with appellate jurisdiction. 28 U.S.C. §§ 1291, 1294(1).[5]

---

[5]    The district court's docket listed the United States as an additional defendant.  Indeed, in her COMPLAINT and AMENDED COMPLAINT, Parker additionally listed the "United States" as a party-defendant in the caption of those pleadings but made no actual allegations against it.  Generally, "a caption is not determinative as to who is a party to a suit." *Williams v. Bradshaw*, 459 F.3d 846, 849 (8th Cir. 2006). *See also Allen v. Purkett*, 5 F.3d 1151, 1153 (8th Cir. 1993) (no claims are stated against parties who "are named as defendants in the [caption but] no factual allegations are made in the complaint against them"); 42 U.S.C. § 2000e-16(c) (only proper party-defendant in employment discrimination case against federal employer is "the head of the department, agency, or unit").  The litigation proceeded before the district court as though the USDA was the lone defendant and the district court's summary judgment order – from which the CLERK'S JUDGMENT was entered – concluded that summary judgment was being granted "against all of [Parker's] claims."  App.[VII], at 1390, R.Doc. 63, at 29 (*emphasis added*).  The CLERK'S JUDGMENT entered below was a "final judgment" resolving all claims against all parties and investing this Court with appellate jurisdiction. *Cf. Clinton v. Garrett*, 49 F.4th 1132, 1138 (8th Cir. 2022) ("[An] appeal must await the terminating order – the decision that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.").  As such, the USDA is properly the sole appellee herein.

2

# V.  Statement of the issues

**A.**    **The district court ruled properly and did not err in limiting the scope of Parker's claims to allegations occurring after Parker settled a prior discrimination complaint in 2015**

*Bradley v. Widnall*, 232 F.3d 626 (8th Cir 2000)

*Worthy v. McKesson Corp.*, 756 F.2d 1370 (8th Cir. 1985)

**B.**    **The district court ruled properly and did not err in entering summary judgment in favor of the USDA on Parker's claims of discrete acts of race and sex discrimination and retaliation in that Parker could not satisfy a *prima facie* case for race discrimination or sex discrimination or retaliation**

*Spears v. Mo. Dept. of Corr. & Hum. Res.*, 210 F.3d 850 (8th Cir. 2000)

*Watson v. McDonough*, 996 F.3d 850 (8th Cir. 2021)

*Altonen v. City of Minneapolis*, 487 F.3d 554 (8th Cir. 2007)

*Simonson v. Trinity Reg'l Health Sys.*, 336 F.3d 706 (8th Cir. 2003)

**C.**    **The district court ruled properly and did not err in entering summary judgment in favor of the USDA on Parker's claims of a hostile work environment in that Parker failed to establish that her allegations of harassment were objectively severe**

*Hervey v. County of Koochiching*, 527 F.3d 711 (8th Cir. 2008)

*Hales v. Casey's Marketing Co.*, 886 F.3d 730 (8th Cir. 2018)

*Liles v. C.S. McCrossan, Inc.*, 851 F.3d 810 (8th Cir. 2017)

3

**D.** **The district court ruled properly and did not err in entering summary judgment in favor of the USDA on Parker's claims of constructive discharge in that Parker failed to establish that her working condition were objectively intolerable**

*Blake v. MJ Optical, Inc.*, 870 F.3d 820 (8th Cir. 2017)

*Cosby v. Steak N Shake*, 804 F.3d 1242 (8th Cir. 2015)

*Wilkie v. Dept. of Health & Human Servs.*, 638 F.3d 944 (8th Cir. 2011)

Appellate Case: 23-3404     Page: 15     Date Filed: 06/20/2024 Entry ID: 5404987

# VI. Statement of the case

## A. Facts

### 1. Overview

On March 6, 2011, Parker – an African-American female – began working for the USDA. App.[II], at 402, R.Doc. 49, at ii; App.[II], at 440, R.Doc. 49-1, at 15. Parker was hired as a "Program Management Assistant" by the Risk Management Agency ("RMA"), a sub-agency of the USDA, and was assigned to the Actuarial and Product Design Division of the RMA in Kansas City, Missouri. App.[II], at 402, R.Doc. 49, at ii; App.[III], at 441, 452, R.Doc. 49-1, at 16, 30.

As a Program Management Assistant, Parker acted in a clerical position as a "personal assistant to the professional staff" of the Division and was responsible for performing "secretarial support" and "support staff types of duties" including:

(a)   handling time and attendance reporting for employees in the Division,

(b)   submitting travel requests for those same employees,

(c)   generating weekly activity reports,

(d)   "maintaining files [and] records," and

(e)   "answering the phone."

App.[II], at 402, R.Doc. 49, at ii; App.[II, III], at 440, 441, R.Doc. 49-1 at 15-16; App.[III], at 488-92, R.Doc. 49-2, at 1-5.

5

The Actuarial and Product Design Division had approximately 28 employees. App.[II], at 402, R.Doc. 49, at ii; App.[III], at 441, 452, R.Doc. 49-1, at 16, 30. Parker was the lone Program Management Assistant assigned to the Division. App.[II], at 402, R.Doc. 49, at ii; App.[III], at 451-52, R.Doc. 49-1, at 29-30. During the bulk of the relevant time period, Parker's first-line supervisor was Ron Lundine (a white male), and her second-line supervisor was Rodger Matthews (an African American male). App.[II], at 403, R.Doc. 49, at iii; App.[III], at 494, R.Doc. 49-3, at 2; App.[III], at 514, R.Doc. 49-4, at 2.

## 2.    Parker's May 29, 2015 settlement

During her career at the RMA, Parker's pay and benefits were never cut or reduced and Parker was never suspended from work. App.[II], at 402, R.Doc. 49, at ii; App.[III], at 445, R.Doc. 49-1, at 20. Nonetheless, Parker filed multiple EEO claims during her employment with the RMA. App.[II], at 404, R.Doc. 49, at iv; App.[III], at 443, R.Doc. 49-1, at 18. To that end, in May of 2015, Parker and the USDA entered into a SETTLEMENT AGREEMENT that resolved any and all EEO claims that Parker had or might have against the USDA/RMA up through the "effective date" of the settlement (May 29, 2015). App.[II], at 404, R.Doc. 49, at iv; App.[III], at 553-56, R.Doc. 49-7, at 1-4. Specifically, the SETTLEMENT AGREEMENT provided that, in exchange for consideration paid to and received by Parker, it was a "full, complete and final release and settlement" covering:

6

> [A]ny and all complaints, grievances, appeals, civil
> actions, charges of Unfair Labor Practice, or claims,
> whether arising under statute, including, bit not limited
> to, Title VII of the Civil Rights Act of 1964, the Age
> Discrimination in Employment Act, the Rehabilitation
> Act . . . whether known or unknown . . . for any concerns
> arising out of or regarding [Parker's] employment with
> the [RMA] through and including the effective date of
> this Agreement.

App.[III], at 553-54, R.Doc. 49-7, at 1-2. Since signing the SETTLEMENT

AGREEMENT, Parker has never filed an action alleging that the USDA breached the

2015 agreement, nor has Parker ever obtained a ruling from the EEOC or any court

setting aside the SETTLEMENT AGREEMENT. App.[II], at 404, R.Doc. 49, at iv;

App.[III], at 444, R.Doc. 49-1, at 19.

### 3. Parker's 2017-18 employment discrimination claims

Following the aforementioned settlement, Parker filed two additional EEO

complaints in 2017 and 2018, to wit:

(a)  In Complaint No. RMA-2016-00794 filed in February of 2017,
Parker alleged race and sex discrimination and retaliation based
on menial work assignments, a lack of detail assignments, little
or no daily work assignments, lack of promotion, and a
counseling letter issued on July 11, 2016.

(b)  In Complaint No. RMA-2018-00965, filed in December of
2018, Parker alleged race and sex discrimination and retaliation
based on her supervisor not verbally communicating with her
for two weeks, a counseling letter issued on August 24, 2018,
and the USDA's initiation of an investigation into allegations
that Parker had made inappropriate and threatening comments
to other USDA employees.

7

App.[II], at 403, R.Doc. 49, at iii; App.[III], at 543-48, R.Doc. 49-5, at 1-6;

App.[III], at 549-52, R.Doc. 49-6, at 1-4.[6]

After exhausting her administrative remedies, Parker sought judicial review

in the district court of both her 2017 and 2018 administrative complaints. App.[II],

at 299-300, R.Doc. 21, at 1-2. With regard to the specific discrimination/

retaliation allegations made by Parker, the summary judgment record

[8] before the district court demonstrated:

---

[6]     After Parker filed her latter administrative complaint of discrimination, Parker's allegation that she was constructively discharged on September 10, 2018, was added by the USDA to the claims to be investigated.

[8]     The USDA limits its references to those portions of the summary judgment exhibits actually cited and referenced in the pleadings before the district court. The Local Rules in effect in the district court unambiguously provided that "[i]f a party's suggestions refer to facts contained in another document, such as a deposition, interrogatory answer, or admission, the party must attach a copy of the relevant excerpt." W.D. MO. LOC. R. 56.1(d) (*emphasis added*). *See also* FED. R. CIV. P. 56(c)(1)(A) (parties should "cit[e] to particular parts of materials in the record"); *Flynn v. FCA US LLC*, 39 F.4th 946, 953 (7th Cir. 2022).

Notwithstanding the Rule, however, in her summary judgment pleadings before the district court, Parker submitted the entire administrative Report of Investigation conducted in response to Parker's complaints of discrimination [App.[IV], at 757-1084; R.Doc. 58-7, at 1-328], and dozens of pages of random emails [App.[V], at 1090-1176; R.Doc. 58-9, at 1-87]. These exhibits were largely unreferenced in the summary judgment pleadings before the district court. As memorably stated:

> Judges are not like pigs, hunting for truffles buried in
> briefs.

*Bloodworth v. Kansas City Bd. of Police Commissioners*, 89 F.4th 614, 624 (8th Cir. 2023) (*quoting United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

8

## a. File management

During the relevant time period, the RMA was undertaking efforts to convert all of its hard-copy paper documents to an electronic format and, as part of this effort, RMA administrative staff were asked to clean "old paper files out of file cabinets." App.[II], at 404, R.Doc. 49, at iv; App.[III], at 499-500, R.Doc. 49-3, at 7-8; App.[III], at 520-27, R.Doc. 49-4, at 8-15.  The Actuarial and Product Design Division had two different types of filing cabinets – filing cabinets located at each individual employee's workspace and eight general "Division" filing cabinets. App.[II], at 404, R.Doc. 49, at iv; App.[III], at 454-55, R.Doc. 49-1, at 32-33.

Part of Parker's job responsibilities as a Program Management Assistant included "managing files" which usually involved handling files on the USDA's computer system.  App.[II], at 404, R.Doc. 49, at iv; App.[III], at 453-54, R.Doc. 49-1, at 32-33.  However, Parker's job occasionally also required her to file papers in the general "Division" filing cabinets.  App.[II], at 404, R.Doc. 49, at iv; App.[III], at 453, R.Doc. 49-1, at 32.  Relatedly, as part of the aforementioned clean-up, Parker was also tasked with clearing items from the "Division" filing cabinets – *i.e.*, destroying paper files and/or scanning them into an electronic format.  App.[II], at 405, R.Doc. 49, at v; App.[III], at 452, R.Doc. 49-1, at 31.[9]

---

[9]      Parker was not asked to clean files located in individual employees' filing cabinets – those tasks were performed by the various individual employees. App.[II], at 405, R.Doc. 49, at v; App.[III], at 454, R.Doc. 49-1, at 33.

Appellate Case: 23-3404      Page: 20      Date Filed: 06/20/2024 Entry ID: 5404987

As the lone Program Management Assistant in the Actuarial and Product Design Division, if Parker did not clean out the general "Division" filing cabinets, there was "no one" else to do it. App.[II], at 405, R.Doc. 49, at v; App.[III], at 453, R.Doc. 49-1, at 31. Nonetheless and notwithstanding the clerical nature of her position, Parker believed that cleaning out the "Division" filing cabinets was a "menial duty" and asking her to do the task was discriminatory and/or retaliatory. App.[II], at 405, R.Doc. 49, at v; App.[III], at 453, R.Doc. 49-1, at 31.

### b. Promotion denial

In her 2017-18 administrative claims of discrimination, Parker broadly alleged that the USDA engaged in a "pattern of promotion denial." App.[II], at 405, R.Doc. 49, at v; App.[III], at 448, R.Doc. 49-1, at 25. When subsequently asked about specific examples of not getting a promotion in her deposition, Parker only vaguely stated that she "felt like [she] was pretty well qualified to do the job" of "a Risk Management Specialist [but] was not considered" by the USDA. App.[II], at 405, R.Doc. 49, at v; App.[III], at 448-49, R.Doc. 49-1, at 25-26. Parker, however, could not recall when the Risk Management Specialist position that she applied for was filled and could not recall the name of the person who got the position except that "it was somebody from the outside [not with the RMA]." App.[II], at 405, R.Doc. 49, at v; App.[III], at 448-49, R.Doc. 49-1, at 25-26.

10

When further pressed in her deposition for examples of how she had been discriminated against by the RMA *viz-a-viz* promotion decisions, Parker eventually could only respond by identifying six white women (Erin Tecce, Teresa Ballard, Debra Lackey, Marni Walter, Charlene Madsen, and a woman named "Stephanie") at the RMA who had been hired at a higher position than that held by Parker and/or who had been promoted during their respective USDA careers (Parker was not promoted during her USDA career). App.[II], at 405, R.Doc. 49, at v; App.[III], at 472-73, R.Doc. 49-1, at 69-70. With regard to the six women identified, however, Parker could provide only limited information as to any similarities between the women and Parker, to wit:

   a.   Erin Tecce – who was entitled to a Veteran's Preference in hiring – was hired from outside the agency for "a position for records management or something like that" in 2009 (*i.e.*, two years prior to Parker starting at the RMA). App.[II], at 406, R.Doc. 49, at vi; App.[III], at 477-78, R.Doc. 49-1, at 74-75.

   b.   Teresa Ballard was the Program Management Assistant in the Actuarial and Product Design Division prior to Parker. Before Parker ever started at the RMA, Ms. Ballard was "promoted to a GS9 position but [Parker] can't remember exactly what it was." App.[II], at 406, R.Doc. 49, at vi; App.[III], at 474-75, R.Doc. 49-1, at 71-72.

11

c. <u>Debra Lackey</u> also was a Program Management Assistant in the Actuarial and Product Design Division prior to Ms. Ballard and was promoted to the front office to assist with records management all before Parker ever started with the USDA in 2011. App.[II], at 406, R.Doc. 49, at vi; App.[III], at 476-77, R.Doc. 49-1, at 73-74.

d. <u>Marni Walter</u> moved to Montana and took a position there as a Risk Management Specialist. App.[II], at 406, R.Doc. 49, at vi; App.[III], at 456, R.Doc. 49-1, at 38.

e. <u>Charlene Madsen</u> applied for and received a promotion to a Management Analyst position in the RMA. Parker did not apply for the position filled by Ms. Madsen. App.[II], at 406, R.Doc. 49, at vi; App.[III], at 456, R.Doc. 49-1, at 38.

e. <u>"Stephanie"</u> was hired from outside the RMA for the Risk Management Specialist position in April of 2018 and Parker apparently did apply for this position. However, Parker did not file an EEO complaint based on this 2018 non-selection. App.[II], at 406, R.Doc. 49, at vi; App.[III], at 478, R.Doc. 49-1, at 75.

12

### c. Lack of work

During her tenure at the USDA, Parker's work duties as a Program Management Assistant "started diminishing" as "[m]ost of the duties that [Parker had been] doing" were being done by many employees for themselves including the fact that most of the Actuarial and Product Design Division employees began "doing their own time and attendance [and] their own travel." App.[II], at 406, R.Doc. 49, at vii; App.[III], at 449-50, R.Doc. 49-1, at 26-27.

According to Parker, she requested additional work assignments and/or special projects but "[i]t wasn't like every day." App.[II], at 406, R.Doc. 49, at vii; App.[III], at 451, R.Doc. 49-1, at 29. In response to one of Parker's requests, Mr. Matthews asked John Underwood, the Associate Deputy Administrator at the RMA, if he could offer Parker a detail into a grade equivalent position. App.[II], at 406, R.Doc. 49, at vii; App.[III], at 567-68, R.Doc. 49-8, at 11-12. Mr. Underwood identified an available 60-day detail that involved working part of the time "in the Beacon Facility and part time in [an air] conditioned mailroom that [was] located in the USDA Warehouse." App.[II], at 406, R.Doc. 49, at vii; App.[III], at 567-68, R.Doc. 49-8, at 11-12. Parker declined the detail.[10] App.[II], at 406, R.Doc. 49, at vii; App.[III], at 567-68, R.Doc. 49-8, at 11-12.

---

[10]     In November of 2017, the RMA as able to place Parker in a 60-day detail to the Farm Service Agency, another agency within the USDA. App.[II], at 406, R.Doc. 49, at vii; App.[III], at 483, 484, R.Doc. 49-1, at 88, 93.

Appellate Case: 23-3404     Page: 24     Date Filed: 06/20/2024 Entry ID: 5404987

At another point in time, Parker asked Mr. Underwood simply to abolish her position as a Program Management Assistant and unilaterally transfer her "non-competitively into a position that had promotion potential." App.[II], at 406, R.Doc. 49, at vii; App.[III], at 568, R.Doc. 49-8, at 12. Mr. Underwood declined Parker's request, explaining that "[t]aking action to abolish an occupied position with the intention of transferring an employee non-competitively into a position that had promotion potential would have violated policy." App.[II], at 407, R.Doc. 49, at viii; App.[III], at 568, R.Doc. 49-8, at 12.

With regard to special projects, in March of 2018, the RMA assigned Parker to work on the agency team that was preparing a report on the Federal Employees Viewpoint Survey. App.[II], at 407, R.Doc. 49, at viii; App.[III], at 481-82, 484, R.Doc. 49-1, at 86-87, 93.

### d.      Beacon Café interactions and the July 11, 2016 letter of counseling

Located within the GSA[11] office building housing the USDA/RMA offices is a dining establishment (the Beacon Café) operated by the Rehabilitation Services for the Blind, a sub-agency of the Missouri Department of Social Services.

---

[11]      GSA, the General Services Administration, is "the largest public real estate organization in the United States" and "serves as the federal government's landlord and designs, builds, manages, and leases the facilities supporting the needs of other federal agencies throughout the government." *General Service Administration: The Federal Government's Landlord*, 38 REAL ESTATE REV. J., No. 1, Art. 3 (Spring 2009).

14

App.[II], at 407, R.Doc. 49, at viii; App.[III], at 442, R.Doc. 49-1, at 17.  Such cafeterias (or canteens or vending machines) on federal property generally are authorized under the auspices of the Randolph-Sheppard Act[12] and are operated by contract between a State Licensing Agency and the federal government.  *See*, *e.g.*, *State of Minn., Dept. of Jobs & Training v. Riley*, 18 F.3d 606, 608 (8th Cir. 1994).

On May 6, 2016, Parker went to the Beacon Café and ordered a bacon and egg sandwich.  App.[II], at 409, R.Doc. 49, at ix; App.[III], at 457, R.Doc. 49-1, at 39.  After biting into the sandwich, Parker took the sandwich back to the Beacon Café food preparer (Calvin Moses) and complained.  App.[II], at 409, R.Doc. 49, at ix; App.[III], at 457-58, R.Doc. 49-1, at 39-40.  After Mr. Moses refused to prepare another sandwich for Parker, the Beacon Café manager (identified by Parker only as "Matt") stepped in and made a new sandwich for Parker.  App.[II], at 409, R.Doc. 49, at ix; App.[III], at 458, R.Doc. 49-1, at 40.

---

[12]     The Randolph-Sheppard Vending Stand Act [20 U.S.C. §§ 107, *et seq.*] was enacted by Congress to provide blind persons with gainful employment and to enlarge their economic opportunities.  In furtherance of those objectives, Congress mandated that all contracts for cafeteria services on federal property are deemed qualifying "cafeterias" for the purposes of the Act.  The Randolph-Sheppard Act program is administered in each state by a State Licensing Agency, and, in Missouri, the Missouri Department of Social Services is the designated State Licensing Agency.  20 U.S.C. § 107a(a)(5), 107(b); *Missouri Dept. of Soc. Servs. v. Esper*, 2021 WL 1111170, op. at *1 (W.D. Mo. Feb. 24, 2021).

15

Parker had no idea what Calvin Moses and/or "Matt" may have reported about the incident involving the sandwich to their supervisor. App.[II], at 409, R.Doc. 49, at ix; App.[III], at 461, R.Doc. 49-1, at 51. But after the sandwich incident, the Area Supervisor for the Rehabilitation Services for the Blind, Tiffany Buettgenbach,[13] complained to the USDA that Parker "was acting in a manner that was antagonizing the cafeteria employees" and was "spending more time in the cafeteria that her allotted lunch and break times." App.[II], at 409, R.Doc. 49, at ix; App.[III], at 514-15, 529, R.Doc. 49-4, at 2-3, 17.

Later, on May 20, 2016, Parker's supervisor, Mr. Lundine, called Parker into his office "for verbal counseling [telling Parker] not to argue with the cafeteria staff and to not spend more time in the cafeteria than her allotted lunch and break times." App.[II], at 406, R.Doc. 49, at ix; App.[III], at 514-15, 529, R.Doc. 49-4, at 2-3, 17. Notwithstanding this admonition, on July 8, 2016, Ms. Buettgenbach again complained about Parker in writing to both the USDA and GSA, stating:

---

[13]     Ms. Buettgenach was employed by the State of Missouri's Rehabilitation Services for the Blind, a component of the Missouri Department of Social Services, Family Support Division, and the state agency administering the Randolph-Sheppard Act in Missouri. *Business Enterprise Program*, https://dss.mo.gov/fsd/rsb/business-enterprise.htm. Neither Ms. Buettgenach nor the employees of the Beacon Café were or are employed by the federal government. Instead, the "language and legislative history [of the Randolph-Sheppard Act] indicate that Congress intended for the Randolph-Sheppard vendors to be treated as self-employed independent contractors." *Almond v. Boyles*, 612 F. Supp. 223, 225 (E.D.N.C. 1985), *aff'd in part*, *vacated in part*, 792 F.2d 451 (4th Cir. 1986)

16

> Due to a continuing pattern of disruptive/disrespectful behavior towards the staff of the Beacon Cafe, I as the Area Supervisor for the Rehabilitation Services for the Blind, am exercising my right to refuse service to Deidre Parker. The Beacon Cafe will temporarily refuse service to Ms. Parker for a period of 90 calendar days beginning on July 18, 2016. This refusal of service will also include denying Deidre Parker access to the space within the Beacon Facility that is assigned for use by the Beacon Cafe.
>
> I am asking for USDA's assistance in notifying Deidre Parker of this determination and with ensuring that Deidre Parker adheres to the terms and conditions associated with the exercising of my right to temporarily refuse service to Deidre Parker.

App.[II], at 409-10, R.Doc. 49, at ix-x; App.[III], at 514-15, R.Doc. 49-4, at 2-3.

Three days later, on July 11, 2016, Mr. Lundine issue a written counseling to Parker for "failure to follow supervisory instructions." App.[II], at 410, R.Doc. 49, at x; App.[III], at 514-15, R.Doc. 49-4, at 2-3. As Mr. Lundine set out in the written counseling:

> On May 20, 2016, I met with you and counseled you regarding a complaint I received regarding your behavior with the staff of the Beacon Cafeteria. You were warned not to be argumentative with the staff, request special treatment or spend more than your 30 minutes for lunch and 15 minutes on break.
>
> On July 8, it was brought to my attention that you have failed to follow my instructions regarding your behavior with the Beacon Cafeteria.

17

App.[II], at 410, R.Doc. 49, at x; App.[III], at 514-15, R.Doc. 49-4, at 2-3; App.[III] at 593, R.Doc. 49-10, at 1. Mr. Lundine's written counseling noted, however, that the letter was "not a disciplinary action" and would "not be placed in [Parker's] Official Personnel Folder." App.[II], at 410, R.Doc. 49, at x; App.[III] at 593, R.Doc. 49-10, at 1. And, here, the written counseling did not go into Parker's personnel file, and she received no suspension or docked pay as a result of the counseling. App.[II], at 410, R.Doc. 49, at x; App.[III], at 460, R.Doc. 49-1, at 48.

Parker stayed away from the Beacon Café for 90 days, but thereafter returned to eating on occasion in Beacon Café. App.[II], at 410, R.Doc. 49, at x; App.[III], at 461, R.Doc. 49-1, at 49.

### e. Limited supervisor verbal communication for two weeks

On August 8, 2018, Parker and her direct supervisor, Mr. Lundine, both attended a mediation regarding one of Parker's then pending EEO claims. App.[II], at 411, R.Doc. 49, at xi; App.[III], at 462-64, R.Doc. 49-1, at 53-55. During the mediation, as admitted by Parker, she became quite "angry" and "took [her] fists and hit [a] desk." App.[II], at 411, R.Doc. 49, at xi; App.[III], at 462-63, R.Doc. 49-1, at 53-54. From the date of the mediation until August 24, 2018, Parker claims that Mr. Lundine would only communicate with her by email and would not verbally engage with her. App.[II], at 411, R.Doc. 49, at xi; App.[III], at 464-65, R.Doc. 49-1, at 55-56.

### f. Co-employee complaints about Parker and the August 24, 2018 written counseling

In August of 2018, Julie McKeague, a Mathematical Statistician at the RMA, reported an incident involving Parker. App.[II], at 411, R.Doc. 49, at xi; App.[III], at 594, 598, R.Doc. 49-11, at 1,5. According to Ms. McKeague:

> [Ms. McKeague] had stopped by [Parker's] desk and [they] were talking and, while talking, [Parker] got an email [from Charlene Madsen] and Parker said, "If this bitch does not leave me alone, I am going to kick her ass."

App.[II], at 411, R.Doc. 49, at xi; App.[III], at 594, 598, R.Doc. 49-11, at 1,5. Ms. McKeague told Parker that "it was not appropriate to threaten physical violence in the workplace" and Parker responded that Ms. McKeague "did not know the whole story." App.[II], at 411, R.Doc. 49, at xi; App.[III], at 599, R.Doc. 49-11, at 6. Ms. McKeague believed that Parker "was serious" and she did not believe that Parker was joking. App.[II], at 412, R.Doc. 49, at xii; App.[III], at 599, R.Doc. 49-11, at 6. Ms. McKeague reported the conversation to her direct supervisor (Zack White) who then forwarded it to Parker's direct supervisor, Mr. Lundine. App.[II], at 412, R.Doc. 49, at xii; App.[III], at 598-99, R.Doc. 49-11, at 5-6; App.[III], at 608, R.Doc. 49-12, at 1.

19

On August 23, 2018, another employee in the RMA's Product Design Branch, Stefanie Cole, submitted an incident report regarding Parker, alleging "two uncomfortable interactions" with Parker during which Parker allegedly:

- had inferred to Ms. Cole that she had been hired only because he was white;

- had improperly disclosed Ms. Cole's personal protected private information (that Parker had access to in her role in reviewing timesheets);

- had looked in Ms. Cole's personal "bags and was generally overfamiliar with [Ms. Cole's] personal space and the things at [her] desk."

App.[II], at 412, R.Doc. 49, at xii; App.[III], at 562, R.Doc. 49-8, at 6; App.[III], at 609-11, R.Doc. 49-13, at 1-3.

The next day, August 24, 2018, Ron Lundine discussed with Parker the issues raised by both Ms. Cole and Ms. McKeague, specifically counseling Parker that:

- She was responsible for communicating professionally and that some personal conversations she had engaged in with Ms. Cole had made Ms. Cole uncomfortable, so she should keep the discussions in the workplace to what was necessary to accomplish the work.

- Discussions implying that Ms. Cole had obtained her position because she is white (and that Parker had been the victim of a racist organizational structure) were inappropriate and should not continue in the workplace.

- Encroaching on personal space and looking through staff's personal items was inappropriate

20

- It was inappropriate for Parker to use personal information about Ms. Cole that Parker obtained in the course of completing her work tasks for Parker's own benefit.

- Requesting to borrow money from co-employees was inappropriate.

- It was inappropriate for Parker to make a comment that she was "going to kick [the] ass" of a co-employee.

App.[II], at 412-13, R.Doc. 49, at xii-xiii; App.[III], at 612, R.Doc. 49-14, at 1.

Parker denied most of the allegations but did acknowledge to Mr. Lundine that she had made the comment about Charlene Madsen. App.[II], at 413, R.Doc. 49, at xiii; App.[III], at 612, R.Doc. 49-14, at 1.[14]

## g. The aborted FPS investigation

In response to the reports of co-employees complaining about Parker, Mr. Underwood referred the matter to the Federal Protective Service ("FPS") for it to consider whether an investigation into the allegations was warranted. App.[II], at 413, R.Doc. 49, at xiii; App.[III], at 572-73, R.Doc. 49-8, at 16-17. The FPS is an independent agency within the Department of Homeland Security that acts as "a federal law enforcement agency [providing] security and law enforcement services in support of federally owned and leased facilities." *Federal Protective Service*, https://www.dhs.gov/federal-protective-service.

---

[14] Again, the written counseling did not go into Parker's personnel file, and she received no suspension or docked pay as a result of the counseling. App.[II], at 413, R.Doc. 49, at xiii; App.[III], at 466-67, R.Doc. 49-1, at 62-63.

21

On August 30, 3028, the FPS determined that an investigation into the allegations was "in order" and the FPS began interviewing RMA employees on September 5, 2018. App.[II], at 413, R.Doc. 49, at xiii; App.[III], at 613, R.Doc. 49-15, at 1. On September 5, 2018, an investigator with the FPS interviewed Teresa Ballard, Stephanie Cole, Ross Heiman, Chun Lam, Ron Lundine, Charlene Madsen, Richard Smith, Trina Weilert, and Zach White. App.[II], at 414, R.Doc. 49, at xiv; App.[II], at 614-24, R.Doc. 49-16, at 1-11. The FPS' investigator also was scheduled to interview Ms. McKeague on September 5, 2018 but "Ms. McKeague asked to telework from home as she was fearful of [Parker] and what she would do if she saw [Ms. McKeague] speaking to [the FPS]." App.[II], at 414, R.Doc. 49, at xiv; App.[II], at 614-24, R.Doc. 49-16, at 1-11.

The FPS' investigator additionally was scheduled to interview Parker on September 5, 2018, but the investigator was informed that Parker "had taken leave and [the investigator] was advised this could have been because [Parker had] heard [the FPS] was investigating her threats toward Ms. Madsen." App.[II], at 414, R.Doc. 49, at xiv; App.[II], at 614-24, R.Doc. 49-16, at 1-11. On September 10, 2018, the FPS was further advised that Parker had abruptly retired from the RMA earlier that day and "had made several phone calls and or left voicemails on her way out the door threatening various people in the office." App.[II], at 414, R.Doc. 49, at xiv; App.[II], at 614-24, R.Doc. 49-16, at 1-11.

22

On September 10, 2018, the FPS – after confirming Parker's sudden retirement – suspended its investigation without making reaching any investigative conclusions. App.[II], at 414, R.Doc. 49, at xiv; App.[II], at 573, R.Doc. 49-8, at 17. Had Parker not retired before the FPS investigation had been completed, she would have been provided with the opportunity to be interviewed and to respond directly to the accusations being made and the issues being investigated. App.[II], at 414, R.Doc. 49, at xiv; App.[II], at 573-76, R.Doc. 49-8, at 17-20.

### h. Parker's retirement

On June 20, 2018, Parker submitted a hostile work environment complaint to John Underwood, the Associate Deputy Administrator at the RMA, and Mr. Underwood initiated an internal hostile work environment investigation. App.[II], at 415, R.Doc. 49, at xv; App.[III], at 566-67, R.Doc. 49-8, at 10-11. However, eight days later, on June 28, 2018, Parker sent an e-mail "rescinding" her request for an investigation and expressly noting that, while she still had issues with her immediate supervisor (Mr. Lundine), "[o]verall, [she was] comfortable and enjoy[ed] the employees and branch managers who rel[ied] on [her] for administrative support." App.[II], at 415, R.Doc. 49, at xv; App.[III], at 566-67, R.Doc. 49-8, at 10-11.

Appellate Case: 23-3404      Page: 34      Date Filed: 06/20/2024 Entry ID: 5404987

In early September of 2018, another USDA employee (Maureen Ferentz) privately told Parker that she had heard that Parker was "being investigated." App.[II], at 415, R.Doc. 49, at xv; App.[III], at 468, R.Doc. 49-1, at 64. At that time, however, Parker learned "nothing" substantively about the ongoing investigation – Parker did not know how the investigation was going to proceed nor did she know if she was going to notified formally of the investigation at some point. App.[II], at 415, R.Doc. 49, at xv; App.[III], at 467-69, R.Doc. 49-1, at 63-65.

Just four days after learning about the existence of an investigation from Ms. Ferentz and before her scheduled interview with the FPS, Parker abruptly retired from the USDA taking a retirement based on "years of service" (32 years of federal government service). App.[II], at 415, R.Doc. 49, at xv; App.[III], at 469-70, 471-72, R.Doc. 49-1, at 65-66, 68-69. Parker retired without advance notice to the RMA, without speaking to anyone in management about the ongoing investigation, and without having any idea where the investigation was heading or what the intent of the investigation was. App.[II], at 415, R.Doc. 49, at xv; App.[III], at 470, R.Doc. 49-1, at 66.[15]

---

[15] Two days after retiring from the USDA, Parker applied to the Social Security Administration for (and ultimately received) disability retirement benefits based on a cardiac condition and depression. App.[II], at 415, R.Doc. 49, at xv; App.[III], at 480, R.Doc. 49-1, at 80.

## B. Procedural history and relevant rulings

On November 21, 2019, Parker filed her COMPLAINT with the district court. App.[I], at 1-16, R.Doc. 1, at 1-16. Following service of process, on May 8, 2020, the USDA – in lieu of an answer – filed a MOTION TO DISMISS the COMPLAINT for failing to state a claim upon which relief could be granted against the USDA. App.[I], at 17-46, R.Doc. 1, at 1-30. Following briefing, on March 30, 2021, the district court entered an order denying the USDA's motion without prejudice in light of the district court's finding "that all issues regarding the exhaustion of plaintiff's administrative remedies and timeliness of plaintiff's filing the instant lawsuit have the potential to be cured through the amendment of plaintiff's pleadings." App.[II], at 295-98, R.Doc. 20, at 1-4.[16] The district court ordered Parker to file an amended complaint. App.[II], at 295-98, R.Doc. 20, at 1-4.

On April 6, 2021, Parker filed her AMENDED COMPLAINT AND JURY DEMAND, the operative pleading herein. App.[II], at 299-318, R.Doc. 21, at 1-20. On April 27, 2021, the USDA filed an answer to Parker's amended pleading. App.[II], at 373-93, R.Doc. 25, at 1-21.

---

[16] The district court's interlocutory order – available at *Parker v. Vilsack*, 2021 WL 12269340, slip op. (W.D. Mo. Mar. 30, 2021) – is not being challenged by the USDA in this appeal.

25

Thereafter, following an extended period of discovery, the USDA filed a summary judgment motion on all claims raised in Parker's AMENDED COMPLAINT. App.[II], at 401-35, R.Doc. 49, at i-xv, 1-20. After complete briefing from the parties, the district court issued an order on August 29, 2023, granting full summary judgment to the USDA. App.[VII], at 1362-90, R.Doc. 63, at 1-29. Specifically, the district court found:

(a)     Parker failed to establish a *prima facie* case of disparate treatment based on race and/or sex[17] and/or retaliation in that most of her complained-her actions by the USDA (e.g., lack of work, filing assignments, being the subject of an internal investigation) were not adverse employment actions [App.[VII], at 1374-83, 1386-88, R.Doc. 63, at 13-22, 25-27];

(b)     Parker failed to establish a *prima facie* case of disparate treatment based on race and/or sex and/or retaliation with regard to the remaining complained-of actions by the USDA (e.g., failure-to-promote, failure-to-transfer) in

---

[17]     In light of its rulings on the *prima facie* cases, the district court did not decide the USDA's alternative argument that Parker's claims failed the final stage of the *McDonnell Douglas* test because Parker could not come forward with sufficient evidence to create a trialworthy issue of pretext to question the USDA's articulated nondiscriminatory reasons for all of its disputed actions.

26

that Parker failed to come forward with adequate
evidence so as to meet the requirement of showing that
the circumstances surrounding the USDA's actions were
sufficient to give rise to an inference of discrimination
[App.[VII], at 1374-83, 1386-88, R.Doc. 63, at 13-22,
25-27];

(c) Parker's cited grievances did not rise to the level of a
hostile work environment and, moreover, Parker failed to
present any evidence showing a causal link between the
USDA's actions/conduct and Parker's race or sex
[App.[VII], at 1383-86, R.Doc. 63, at 22-25]; and

(d) Parker did not satisfy a *prima facie* case for constructive
discharge in that Parker did not show her workplace was
intolerable or, alternatively, Parker did not show that the
USDA intended for her to quit [App.[VII], at 1388-89,
R.Doc. 63, at 27-29].

Appellate Case: 23-3404     Page: 38     Date Filed: 06/20/2024 Entry ID: 5404987

# VII.  Summary of the argument

The district court properly granted summary judgment on all of Parker's employment discrimination claims.  The bulk of Parker's allegations of discrete acts of discrimination did not involve adverse employment actions.  And for those acts that are typically deemed adverse employment actions (e.g., failure-to-promote), Parker utterly failed to come forward with any evidence showing who was selected for the positions and the qualifications of the selectee *viz-a-viz* Parker's own qualifications.

Similarly, Parker's evidence in support of claims of a hostile work environment and a constructive discharge failed to satisfy the *prima facie* cases for such actions, primarily failing to establish a workplace that was intolerable and/or that the workplace was permeated with discrimination.

Appellate Case: 23-3404     Page: 39     Date Filed: 06/20/2024 Entry ID: 5404987

# VIII.  Argument

## A.    Standard of appellate review for Rule 56 motions

This Court reviews grants of summary judgment *de novo*. *City of Carthage, Mo. v. Union Pac. R.R. Co.*, 61 F.4th 565, 568 (8th Cir. 2023).  As in other litigation, in cases involving claims of employment discrimination,[18] summary judgment is to be rendered if a "movant shows that there [are] no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  While the Court must view the facts in the light most favorable to the party opposing summary judgment, such a rule "does not mean [the Court is] bound to credit the [non-moving party's] version of events, come what may." *Michael v. Trevena*, 899 F.3d 528, 532 (8th Cir. 2018).  Instead, parties opposing summary judgment must "set forth specific facts in the record showing that there is a genuine issue for trial." *Denn v. CSL Plasma, Inc.*, 816 F.3d 1027, 1032 (8th Cir. 2016).  And while a party may oppose summary judgment by establishing factual disagreements, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law" will preclude summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

---

[18]    "There is no 'discrimination case exception' to the application of summary judgment." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (*en banc*).

Appellate Case: 23-3404    Page: 40    Date Filed: 06/20/2024 Entry ID: 5404987

**B.  The district court ruled properly and did not err in limiting the scope of Parker's claims to allegations occurring after Parker settled a prior discrimination complaint in 2015.**

In her BRIEF OF APPELLANT, Parker contends that the district court erred by limiting the scope of her hostile work environment claim to conduct occurring after May 29, 2015.  BRIEF OF APPELLANT, at 45  However, Parker – quite tellingly – provides no citation to the appellate record identifying when the district court made any ruling so limiting Parker's claim.  In fact, the district court made no such ruling.

At issue before the district court was the impact a prior settlement agreement.  Specifically, in 2015, Parker and the USDA entered into an agreement – with an effective date of May 29, 2015 – to resolve all of Parker's employment discrimination complaints against the USDA.  In entering into that SETTLEMENT AGREEMENT, Parker voluntarily and explicitly resolved any and all EEO claims that she had or might have with the USDA up through the effective date of the agreement.[19] Parker has never alleged that the USDA has breached the SETTLEMENT AGREEMENT nor otherwise challenged the agreement before the EEOC or any court.

---

[19]    Before the district court, Parker conceded that with her 2015 settlement agreement, she "waived all claims that arose prior to the execution of the settlement agreement."  App.[VI], at 1310; R.Doc. 59, at 5.

Before the district court, the USDA argued that one impact of the SETTLEMENT AGREEMENT was to limit the scope of Parker's discrimination, retaliation, and/or harassment claims to conduct and actions occurring after May 29, 2015. As she does before this Court, Parker claimed that, notwithstanding her settlement in 2015, acts occurring prior to May 29, 2015 were "admissible for other purposes and the Court should review them as evidence supporting plaintiff's claim" of a hostile work environment. BRIEF OF APPELLANT, at 48.[20] However, the only "other purpose" ever identified by Parker was that she was relying on such conduct "as evidence of the continuing violation of the defendant." BRIEF OF APPELLANT, at 48. Such a use of the evidence is not mere "background," but an effort to establish the substantive viability of a hostile work environment claim.

In its summary judgment order, the district court addressed Parker's prior settlement and her wish to use evidence of pre-settlement conduct, simply noting:

> While actions from before a settlement may be relevant to consideration of a current practice, the subjects of this lawsuit are the 2016 and 2018 complaints, and the actions alleged in those complaints will be the focus of this order.

---

[20]  Parker cites to the Supreme Court's decision in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061 (2002) in support of her argument. Without question, in *Morgan*, the Court considered the evidentiary impact of a plaintiff's claims that were otherwise untimely under the applicable statute of limitation and concluded that Title VII's statute of limitations does not "bar an employee from using the prior acts as background evidence in support of a timely claim." Id. at 113, 122 S.Ct. at 2072. *Morgan*, however, did not address the permissible use – if any – of evidence of claims that a plaintiff previously <u>settled</u>.

Appellate Case: 23-3404     Page: 42     Date Filed: 06/20/2024 Entry ID: 5404987

App.[VII], at 1374; R.Doc. 63, at 13.  To the extent that Parker is alleging the district court erred by refusing to consider as "background" evidence of conduct occurring prior to the SETTLEMENT AGREEMENT, Parker is wrong inasmuch as the district court made no such ruling.  To the extent that Parker is alleging the district court ruled that evidence of conduct occurring before the SETTLEMENT AGREEMENT would not be considered as part of the substantive claim of a hostile work environment, the district court was not in error.[21] *Cf. Bradley v. Widnall*, 232 F.3d 626, 633-34 (8th Cir 2000), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) ("Our review of the record satisfies us that the decision of the district court in confining its review of the evidence to conduct which occurred after the settlement agreement . . . was not plain error in this case.").  *See also Worthy v. McKesson Corp.*, 756 F.2d 1370, 1373 (8th Cir. 1985) ("If a party to a Title VII suit who has previously authorized a settlement changes [her] mind . . ., that party remains bound by the terms of the agreement.").

---

[21]     Parker also claims that the district court limited her hostile work environment claim to only conduct she specifically plead in her AMENDED COMPLAINT.  BRIEF OF APPELLANT, at 46.  Again, Parker provides no citation to the record and, indeed, the district court made no such ruling.  As a practical matter, though, both the USDA and the district court did confine the scope of the summary judgment litigation to the matters set forth in the AMENDED COMPLAINT (which itself restated the factual allegations raised in the two administrative complaints of discrimination) based on Parker's prior concession that the only "issues of which Plaintiff complains are [those] found in EEO complaints numbered RMA-2016-00794 and RMA-2018-00965."  App.[II], at 256; R.Doc. 17, at 8.

Appellate Case: 23-3404     Page: 43     Date Filed: 06/20/2024 Entry ID: 5404987

**C.** **The district court ruled properly and did not err in entering summary judgment in favor of the USDA on Parker's claims of discrete acts of race and sex discrimination and retaliation in that the district court correctly found that Parker could not satisfy a *prima facie* case for race or sex discrimination or retaliation.**

As noted by the district court, Parker alleged several claims of purported discrete[22] acts of discrimination and retaliation, to wit:

(1)     two letters of counseling,

(2)     a failure to train Parker or allow her a transfer, detail, job shadow or reassignment that would lead to a promotion and a history of promotion of lesser qualified individuals and denying Parker such the opportunity,

(3)     a manager's refusal to speak to Parker for two weeks,

(4)     Parker's exclusion from meetings,

(5)     the initiation of an FPS investigation, and

(6)     a lack of work.

App.[VII], at 1375, R.Doc. 63, at 14.

---

[22]     In analyzing whether employment actions are "discrete acts," the Supreme Court has noted that such acts are those whose occurrence dates are readily identifiable (such as terminations, demotions, suspensions, denied promotions, or failures to hire). *Morgan*, 536 U.S. at 114-15, 122 S.Ct. at 2073. Discrete employment acts must be individually and timely raised administratively. *Id.* at 114, 122 S.Ct. at 2073. By contrast, *Morgan* recognized that "hostile work environment" claims are "composed of a series of separate acts that collectively constitute one unlawful employment practice." *Id.* at 117, 122 S.Ct. at 2074.

33

After analyzing each contention, the district court properly concluded that (with the exception of two failure-to-promote claims), Parker failed to establish that any of the discrete acts were "adverse employment actions." App.[VII], at 1376-83, R.Doc. 63, at 15-22. The district court's finding was not in error.

Because Parker did not and does not allege that she has direct evidence of race or sex discrimination or retaliation by the USDA, the efficacy of Parker's discrete discrimination and retaliation claims was properly examined by the district court utilizing the familiar burden-shifting analysis articulated by the Supreme Court in the seminal case of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-05, 93 S.Ct. 1817 (1973). Applying *McDonnell Douglas*, Parker bore the initial burden of establishing *prima facie* cases of discrimination and retaliation. *Heisler v. Nationwide Mut. Ins. Co.*, 931 F.3d 786, 794 (8th Cir. 2019). If (and only if) Parker established such *prima facie* cases, then the burden would have shifted to the USDA to articulate legitimate reasons for its adverse actions. *Id.* Once the USDA articulated such reasons, however, the burden would have shifted back to Parker to show that the USDA's stated reasons were "merely a pretext for discrimination or retaliation." *Id.* However, "[d]espite this shifting of the burden of production, 'the plaintiff at all times [bore] the ultimate burden of persuasion.'" *Id.* (*quoting*, *in part*, *St. Mary's Hon. Ctr. v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 2749 (1993).

Appellate Case: 23-3404     Page: 45     Date Filed: 06/20/2024 Entry ID: 5404987

As found by the district court, the *prima facie* cases for race discrimination, gender discrimination, and retaliation are all well-settled. To initially shift the burden to the USDA under *McDonnell Douglas*, Parker was required to establish:

(1) she was a member of a protected group (*i.e.*, she was a minority or female or had engaged in protected EEO activity),

(2) she was meeting the legitimate expectations of her job duties and/or was qualified for the jobs to which she applied for employment,

(3) she suffered an adverse employment action or actions, and

(4) a causal connection existed between her membership in the protected group(s) and the adverse action(s).

*Faulkner v. Douglas Cty. Neb.*, 906 F.3d 728, 732 (8th Cir. 2018) (race discrimination); *DePriest v. Milligan*, 823 F.3d 1179, 1185 (8th Cir. 2016) (gender discrimination); *Du Bois v. Bd. of Reg. of the Univ. of Minn.*, 987 F.3d 1199, 1203 (8th Cir. 2021) (retaliation). As noted *supra*, the district court – with the exception of two discrete instances of a failure to promote that will be discussed separately – concluded that Parker could not meet a *prima facie* case of discrimination or retaliation inasmuch as none of her discrete claims constituted an adverse employment action.

Appellate Case: 23-3404   Page: 46   Date Filed: 06/20/2024 Entry ID: 5404987

In *Spears v. Mo. Dept. of Corr. & Hum. Res.*, 210 F.3d 850 (8th Cir. 2000), this Court elaborated on what constitutes an adverse employment action, explaining:

> An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage. Termination, reduction in pay or benefits, and changes in employment that significantly affect an employee's future career prospects meet this standard, but minor changes in working conditions that merely inconvenience an employee or alter an employee's work responsibilities do not.

*Id.* at 853. Accordingly, "[n]ot everything that makes an employee unhappy is an actionable adverse employment action, [instead] an adverse employment action is exhibited by a material employment disadvantage, such as a change in salary, benefits, or responsibilities." *LaCroix v. Sears, Roebuck, and Co.*, 240 F.3d 688, 691 (8th Cir. 2001). Consequently, "[c]onduct that is merely rude, abrasive, unkind, or insensitive does not come within the scope of the law." *Shaver v. Independence Stave Co.*, 350 F.3d 716, 721 (8th Cir. 2003).

Applying this law, the district court properly determined that Parker's nebulous complaints about a lack of work and limited communications from her supervisor and exclusion from meetings – even if actually discrete actions under *Morgan* – were not adverse employment actions. With respect to such conduct, the district court noted that Parker did "not allege any material employment disadvantage because of" the actions. App.[VII], at 1376; R.Doc. 63, at 15.

36

With regard to the two written counselings received by Parker, the district court observed that the letters were explicitly deemed by the USDA to be non-disciplinary. App.[VII], at 1377; R.Doc. 63, at 16. Indeed, neither of the two written counselings was used as a "stepping stone" to more discipline by the USDA, neither of the two written counselings was placed in Parker's personnel file, and neither written counseling resulted in any loss or diminishment in compensation, responsibilities, or other benefits. Consequently, consistent with a long line of precedent, the district court found the letters of counseling did not constitute adverse employment actions. *See*, *e.g.*, *Watson v. McDonough*, 996 F.3d 850, 855 (8th Cir. 2021) ("written counseling[s] are not adverse employment actions for purposes of Title VII"); *Gibson v. Concrete Equip. Co., Inc.*, 960 F.3d 1057, 1065 (8th Cir. 2020) (an employer's "written criticism does not constitute a materially adverse action 'when it did not result in any change' to the 'terms or conditions' of employment"); *McConnell v. Anixter, Inc.*, 944 F.3d 985, 989 (8th Cir. 2019) ("warning letter [the plaintiff] received was insufficiently adverse because it did not result in a 'tangible change in working conditions that produce[d] a material employment disadvantage'"); *Wilson v. Ark. Dept. of Hum. Servs.*, 850 F.3d 368, 371 (8th Cir. 2017) ("a written warning does not constitute an adverse employment action").

37

Similarly, the district court concluded that the institution of the FPS investigation into the allegations made about Parker by some of her RMA co-workers was not an adverse employment action, noting:

> There was an investigation by FPS[23] into statements Plaintiff made to other employees. However, the investigation did not conclude because Parker retired before she could be interviewed. Because there was no change in Parker's working condition due to this investigation that was not concluded, this cannot be considered an adverse employment action.

App.[VII], at 1377-78; R.Doc. 63, at 16-17. The district court's determination was proper and consistent with this Court's precedent. *See, e.g.*, *Jones v. City of St. Louis*, Missouri, 825 F.3d 476, 480 (8th Cir. 2016); *Altonen v. City of Minneapolis*, 487 F.3d 554, 560 (8th Cir. 2007) ("Internal investigations into employee complaints are not adverse employment actions when they do not result in any change in form or condition to the employee's employment."); *Jones v. Fitzgerald*, 285 F.3d 705, 715 (8th Cir. 2002).

---

[23] The district court did not address the USDA's further argument that even if the institution of an investigation into Parker was an adverse employment action, it was an action undertaken by FPS, not an action taken by the USDA. In this case, the undisputed facts established that the USDA merely sought the opinion of the FPS (an outside agency) as to whether the situation required an investigation given the allegations made against Parker. Thereafter, it was the FPS – not the USDA -- that determined an investigation was appropriate and that then instituted and conducted the ensuing investigation.

38

With respect to Parker's allegations regarding a denial of training and special project assignments, the district court found:

> [Parker] alleges that her work duties as Program Management Assistant started "diminishing" and that she was denied the opportunity to perform additional work assignments or special projects. Plaintiff lists numerous situations where she requested information about . . . training or special project[s] and alleges that she was denied. However, [Parker] does not demonstrate how they would have resulted in a "material, beneficial change to her employment."

App.[VII], at 1380-81, R.Doc 63, at 19-20. The district court's ruling was entirely consistent with this Court's precedent. It is well-settled that "an employer's denial of an employee's request for training is not, without more, an adverse employment action." *Watson v. McDonough*, *supra*, 996 F.3d at 855 (*quoting Griffith v. City of Des Moines*, 387 F.3d 733, 737 (8th Cir. 2004)). Instead:

> To establish that [an] alleged failure to train was an adverse employment action, [the plaintiff] must show it caused her a "material employment disadvantage," such as termination, a cut in pay or benefits, or loss of future career prospects.

*Robinson v. Am. Red Cross*, 753 F.3d 749, 755 (8th Cir. 2014) (*quoting*, *in part*, *Butler v. Crittenden Cnty., Ark.*, 708 F.3d 1044, 1050 (8th Cir. 2013). *See also McNeil v. Union Pac. R.R. Co.*, 936 F.3d 786, 792 (8th Cir. 2019) ("[A] supervisor's denial of [plaintiff's] training request was not a tangible change in working conditions that produce[d] a material employment disadvantage, so it was not an adverse employment action.").

39

Similarly, the Court found that Parker's claims of a denial of a transfer largely suffered from the same lack of clarity, noting that Parker offered "no evidence of what the positions she sought would entail or what the material differences would have been, like change in pay, supervision, duties, or promotion potential." App.[VII], at 1382, R.Doc 63, at 21.

After the district court's opinion was issued, the Supreme Court announced its decision in *Muldrow v. City of St. Louis, Missouri*, 144 S.Ct. 967 (2024). In *Muldrow*, the Court held that in cases involving involuntary transfer of employees:

> [A plaintiff must] show that the transfer brought about some "disadvantageous" change in an employment term or condition. . . . To make out a Title VII discrimination claim, a transferee must show <u>some harm</u> respecting an identifiable term or condition of employment. What the transferee does not have to show . . . is that the harm incurred was "significant." Or serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar.

*Id.* at 974. Assuming for the sake of this appeal that the same standard would apply to a denial of a transfer as to an involuntary employer-forced transfer,[24] the district court's ruling is still correct inasmuch as Parker showed <u>no harm</u> arising from the denial of her amorphous requests for training and/or transfers.

---

[24]     *But see Cavanaugh v. Wal-Mart Stores E., LP.*, 2024 WL 2094010, at *4 (M.D. Pa. May 9, 2024) ("*Muldrow* involved an employee's involuntary job transfer, while the present case involves an employee's request for a voluntary job transfer. As such [*Muldrow*] is not applicable to the present case and does not make the denial of Plaintiff's request an adverse employment action.")

Appellate Case: 23-3404     Page: 51     Date Filed: 06/20/2024 Entry ID: 5404987

However, with respect to two potential training/transfer opportunities, the district court found:

> For the only position that does demonstrate at least a pay raise, an inquiry to [Jeana] Nolan for a G-9 position,[25] [Parker] provides no evidence that she applied for this transfer other than the email asking about reassignment to Nolan's section.
>
> Plaintiff provides an email exchange with Tracy Ware and Michael Alston from May 2016, requesting information on a career development training program, but there is no evidence that she actually applied to a training and that she was denied. Thus, this does not show an adverse employment action.

App.[VII], at 1382, R.Doc 63, at 21. Arguably, these two opportunities, by plain common sense, demonstrate "some harm" by not being offered to Parker.

However, the district court further concluded that Parker's claims of denial of training and denial of transfers – even if adverse employment actions – additionally failed the *prima facie* tests for discrimination and retaliation because:

> [Parker] must still show that the decision not to transfer [or train] was based on a protected characteristic . . . and [Parker] provides no evidence of that. [Parker] further has no evidence that other, similarly situated employees were treated differently than her in applying for these positions or seeking these transfers [or training]. The Court could not determine there was discrimination [or retaliation] here based on the evidence [Parker] provides.

---

[25]    In August of 2016, [Parker] contacted Jeana Nolan about reassignment to a different section. Nolan told [Parker] that there was a G-9 position open, but no G-7 positions at the time that she could fill.

App.[VII], at 1365, R.Doc. 63, at 4.

Appellate Case: 23-3404    Page: 52    Date Filed: 06/20/2024 Entry ID: 5404987

App.[VII], at 1381, R.Doc 63, at 20 n.3. *Cf. Miller v. Coca-Cola Enterprises, Inc.*, 178 Fed. Appx. 583, 585 (8th Cir. 2006) (summary judgment affirmed where "no evidence" was produced that action was taken because of race). Regardless of the impact of *Muldrow* on the analysis of the denial of training and transfers as adverse employment actions, the district court's ruling that Parker did not establish a *prima facie* case with respect to those actions must be affirmed. *Cf. Brummett v. Taylor*, 569 F.3d 890, 892 (8th Cir. 2009) (where district court makes ruling based on alternate grounds, judgment may be affirmed on only one of the stated grounds).[26]

Finally, with regard to Parker's allegations regarding a failure to promote, the USDA does not dispute that a failure-to-promote is an adverse employment action. Though most of Parker's allegations regarding promotion opportunities were too vague to permit analysis[27] or were untimely,[28] the district court did note:

---

[26] Parker's brief does not address the alternate ruling. *Cf. Ziegler v. 3M Co.*, 2024 WL 2733222, at *1 (8th Cir. May 28, 2024) ("If the district court states multiple alternative grounds for its ruling and the appellant does not challenge all those grounds in the opening brief, then we may affirm the ruling.").

[27] Parker generally concedes that she has no "paperwork" related to most of her promotion allegations and makes no effort to provide specifics. BRIEF OF APPELLANT, at 28. *Cf. Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998) (a Title VII plaintiff minimally must "delineat[e] positions to which she applied and was rejected")

[28] Parker repeatedly points to a hiring decision made by the USDA to fill a Management Analyst position in August 2015. BRIEF OF APPELLANT, at 27, 51-52. However, that discrete action occurred more than 45 days before Parker sought EEO counseling on July 7, 2016. App.[IV], at 791, R.Doc. 58-7, at 32.

> Plaintiff alleges two instances that could qualify as an adverse employment action of failure to promote. Plaintiff alleges that she applied for two positions in 2016: Risk Management Specialist and a Contract Specialist.

App.[VII], at 1379: R.Doc. 63, at 18.  However, with respect to these two positions, the district court further concluded:

> [Parker] has not provided enough facts to survive summary judgment for failure to promote.  [Parker] did not provide any information on the qualifications of the other women she alleges were promoted above her.

App.[VII], at 1379: R.Doc. 63, at 18.[29]  The district court ruled properly.

In a failure-to-promote claim, the *prima facie* case is typically altered to require a plaintiff to establish:

(1)    she was a member of a protected group,

(2)    she was qualified and applied for a promotion to a position for which the employer was seeking applicants,

(3)    she was not promoted, and

(4)    similarly situated employees, not part of the protected group, were promoted instead.

---

[29]    Similarly, before this Court, Parker merely states that she was placed on a "Best Qualified" list for both positions but not selected.  BRIEF FOR APPELLANT, at 28.  And the only evidentiary support cited by Parker for her failure to be promoted to these two positions is her own respective application packets for the two openings.  BRIEF FOR APPELLANT, at 28 (*citing* App.[VI], at 1229-52; R.Doc. 58-16, at 1-24).

*Avina v. Union Pac. R.R. Co.*, 72 F.4th 839, 843-44 (8th Cir. 2023) (*emphasis added*). *See also Carter v. Atrium Hosp.*, 997 F.3d 803, 810 (8th Cir. 2021) (characterizing the fourth step as proof that "the employer filled the position with a person not in the same protected class").  While the Court' delineation of the requirement for the fourth step of the *prima facie* case in a failure-to-promote varies slightly in the case law, the central requirement is clear – to even begin to assert a discrimination claim for a failure-to-promote, an aggrieved plaintiff must minimally show that the individual promoted to the position by the employer did not share the alleged discriminatory characteristic(s).  Simply put, Parker failed this most basic of evidentiary showings.  Consequently, the district court properly concluded that Parker could not meet a *prima facie* case for a failure-to-promote based on race or sex discrimination or retaliation.[30]  *Cf. Simonson v. Trinity Reg'l Health Sys.*, 336 F.3d 706, 710 (8th Cir. 2003) (affirming summary judgment on failure-to-promote age discrimination claim where plaintiff "failed to provide the district court with specific ages and persons hired into available positions").

---

[30]    Before the district court, the USDA alternatively argued that, even if Parker could establish a *prima facie* case of discrimination or retaliation for any or all of her alleged discrete acts, summary judgment in favor of the USDA was still proper inasmuch as Parker could not establish pretext under the final stage of the *McDonnell Douglas* framework.  Although the district court did not reach this issue, the evidence establishes that the district court's judgment may be affirmed on this ground as well. *United States ex rel. Kraemer v. United Dairies, L.L.P.*, 82 F.4th 595, 603 n.6 (8th Cir. 2023) (this Court may "affirm a judgment on any ground supported by the record.").

44

**D.** **The district court ruled properly and did not err in entering summary judgment in favor of the USDA on Parker's claims of a hostile work environment in that Parker failed to establish that her allegations of harassment were objectively severe.**

With regard to Parker's claims of a hostile work environment based on race and/or sex, the district court concluded that Parker could not satisfy this Court's articulated standard for establishing a trialworthy case of a hostile work environment. The district court's ruling was correct.

In this Circuit, in order to establish an actionable harassment claim that would survive summary judgment, Parker[31] was required to establish:

(1)     she was a member of a protected class,

(2)     she was subject to unwelcome harassment,

(3)     the harassment resulted from membership in the protected class,

(4)     the harassment was severe enough to affect the terms, conditions, or privileges of employment.

*Mahler v. First Dakota Title Ltd. P'ship*, 931 F.3d 799, 806 (8th Cir. 2019). Before the district court, the USDA focused on the third and fourth elements – whether the conduct complained of by Parker resulted from her race and/or sex and whether the conduct complained of by Parker was sufficiently severe.

_____

[31]     Plaintiffs alleging hostile work environments bear the burden of showing a *prima facie* case. *Erenberg v. Methodist Hosp.*, 357 F.3d 787, 792 (8th Cir. 2004).

With regard to the former requirement, this Court has made it clear that a plaintiff must present "competent evidence to link the complained of conduct to a race-based [or gender-based] animus" and such evidence requires "more than bare allegations that [a plaintiff was] harassed her because of her race" or sex. *Palesch v. Missouri Comm'n on Hum. Rts.*, 233 F.3d 560, 567 (8th Cir. 2000). In this case, at best, as found by the district court, Parker's evidence fell well short of this threshold:

> Plaintiff argues that all of the adverse job actions she alleged for her disparate treatment claim, including denials of transfers and special projects, written counseling letters, the FPS investigation, and her supervisor only speaking to her via email contributed to a hostile work environment based on her race and gender.[32] [Parker] has not established that this conduct resulted from her membership in a protected class. [Parker] lists these actions and claims they were taken because of her protected characteristics, but with no further evidence.

App.[VII], at 1384-85, R.Doc. 63, at 23-24 (*citing Bell v. Baptist Health*, 60 F.4th 1198, 1205 (8th Cir. 2023) (granting summary judgment because the plaintiff did not provide evidence that the actions by her coworker were because of her sex)).

---

[32] As noted by the district court, Parker's hostile work environment claim is comprised of the same discrete employment actions that the district court initially properly concluded were not actionable in and of themselves for purposes of disparate treatment. Although there does not appear to be any clear precedential guidance, the USDA believes that the Court should adopt a rule to the effect that alleged discrete acts of discrimination that do not and cannot survive summary judgment scrutiny as disparate treatment should not be included in the calculation of that plaintiff's allegations of a hostile work environment.

46

As the district court properly concluded, Parker produced no evidence establishing that any of the identified discrete actions – individually or as part of any "pattern"[33] – had a causal nexus to the fact that Parker is African-American or female. The absence of such evidence was fatal to Parker's hostile work environment claims. As noted by this Court in another case:

> [The plaintiff] claims that [her supervisors] created a hostile work environment by, among other things, constantly criticizing her, requiring her to report to [one supervisor], and yelling at her on several occasions. As an example, [the plaintiff] cites to [one supervisor's] comment that she made him "so damn mad." Even if we assume that [the supervisors'] actions were abusive, [the plaintiff] must prove that she was the target of harassment because of her sex and that the offensive behavior was not merely non-actionable, vulgar behavior. [The plaintiff] has failed to produce such evidence. She simply recites a list of actions that [the supervisors] took against her, and claims they were taken because she is a woman. There is insufficient evidence to support an inference of discrimination.

---

[33] It should be noted that, although Parker repeatedly utilizes generic assertions that the USDA engaged in a "pattern" of discrimination, Parker did not plead or pursue a "disparate impact" claim and Parker did not disclose or identify any statistical evidence to support such a claim. *Cf. Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 987, 108 S. Ct. 2777, 2785 (1988) ("[E]vidence in 'disparate impact' cases usually focuses on statistical disparities, rather than specific incidents."); *Evers v. Alliant Techsystems, Inc.*, 241 F.3d 948, 953 (8th Cir. 2001) ("A plaintiff in a disparate impact case must first establish a *prima facie* case of disparate impact by identifying a specific employment practice and then presenting statistical evidence of a kind and degree sufficient to show that the practice in question caused the plaintiff to suffer adverse employment action because of his or her membership in a protected group.").

47

*Hervey v. County of Koochiching*, 527 F.3d 711, 721-22 (8th Cir. 2008). Based on the competent evidence in the summary judgment record, the district court correctly concluded that Parker failed to meet her burden of establishing that the conduct of the USDA about which she complains was based on her race or her gender.

Moreover, even if the Court were to find that there was sufficient evidence to establish that the subject conduct of the USDA "was the result of" Parker's race and/or gender, the district court still properly granted summary judgment based on its alternative ruling that Parker did not show that any alleged harassment was so severe or pervasive so as to have affected a term, condition, or privilege of her employment. App.[VII], at 1385, R.Doc. 63, at 24 ("Further, [Parker] does not present evidence that any of [the disputed actions by the USDA] affected a term or condition of her employment."). To this end, the law is well-settled that "[h]ostile work environment claims are limited in nature." *Anda v. Wickes Furniture Co.*, 517 F.3d 526, 531 (8th Cir. 2008). Specifically:

> Hostile work environment harassment occurs when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.

48

*Liles v. C.S. McCrossan, Inc.*, 851 F.3d 810, 823 (8th Cir. 2017). With regard to the required severity and pervasiveness of alleged harassment, courts must analyze the offending conduct under both a subjective and an objective test. *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016). In this case, even accepting that Parker may have subjectively viewed the USDA's conduct as hostile and abusive,[34] applying this Court's precedent, the district court properly found that Parker had failed to establish that the conduct of the USDA was "sufficiently severe or pervasive [so as] to create an environment that a reasonable person would find hostile or abusive and that actually altered the conditions of [Parker's] employment." *Hales v. Casey's Marketing Co.*, 886 F.3d 730 735 (8th Cir. 2018).

---

[34] In this case, there actually is a substantial argument that Parker's work environment was not even <u>subjectively</u> hostile and abusive. On June 20, 2018, Parker sent an email complaining that she was being subjected to a hostile work environment at the RMA. App.[II], at 415; R.Doc. 49, at xv; App.[III], at 49-8, at 10-11. Immediately thereafter, the RMA initiated an investigation. App.[II], at 415; R.Doc. 49, at xv; App.[III], at 49-8, at 10-11. However, just eight days later, on June 28, 2018, Parker send another email asking to <u>rescind</u> her hostile work environment complaint and noting that, while she continued to have issues with her immediate supervisor (Ron Lundine), "[[o]verall, [she was] familiar, comfortable and enjoy[ed] the employees and branch managers who rel[ied] on [her] for administrative support." App.[II], at 415; R.Doc. 49, at xv; App.[III], at 49-8, at 10-11. *Cf. Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22, 114 S.Ct. 367, 370 (1993) ("[I]f the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation."). *See also Mahler v. First Dakota Title Ltd. P'ship*, *supra*, 931 F.3d at 807 (*quoting Kratzer v. Rockwell Collins, Inc.*, 398 F.3d 1040, 1047-48 (8th Cir. 2005)) ("[A]n employee's admission that [complained-of conduct] was not abusive is fatal to the employee's Title VII sexual harassment claim.").

49

Here, even assuming that Parker could have shown that the USDA's actions were undertaken based on Parker's race and gender, the limited incidents alleged by Parker missed the mark of demonstrating an objective hostile work environment. *Cf. Jackman v. Fifth Jud. Dist. Dept. of Corr. Servs.*, 728 F.3d 800, 806 (8th Cir. 2013) ("[Title VII] is demanding and does not prohibit all verbal or physical harassment and it is not a general civility code for the American workplace."); *Carpenter v. Con-Way Cent. Express, Inc.*, 481 F.3d 611, 618 (8th Cir. 2007). "Harassment standards are demanding." *Arraleh v. County of Ramsey*, 461 F.3d 967, 979 (8th Cir. 2006). And Parker's evidence of a hostile work environment fell significantly short of these demanding standards.

**E.  The district court ruled properly and did not err in entering summary judgment in favor of the USDA on Parker's claims of constructive discharge in that Parker failed to establish that her working condition were objectively intolerable.**

In the final count of her AMENDED COMPLAINT, Parker alleged that she was constructively discharged from the USDA. To establish a *prima facie* case of constructive discharge, a plaintiff had to show that:

(1) a reasonable person in the plaintiff's situation would find the working conditions intolerable,

(2) the employer intended to force the plaintiff to quit.

50

*Carpenter v. Con-Way Central Express, Inc.*, *supra*, 481 F.3d at 616.  *See also Green v. Brennan*, 578 U.S. 547, 555, 136 S.Ct. 1769, 1777 (2016) ("A plaintiff must prove first that he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign."). When an "employee resigns in the face of such circumstances, Title VII treats that resignation as tantamount to an actual discharge." *Id*. at 555, 136 S.Ct. at 1776-77.

However, an aggrieved plaintiff asserting a claim of constructive discharge "shoulders a substantial burden." *Blake v. MJ Optical, Inc.*, 870 F.3d 820, 826 (8th Cir. 2017). *See also O'Brien v. Dept. of Agriculture*, 532 F.3d 805, 810-11 (8th Cir. 2008) (T]he bar is quite high in [constructive discharge] cases [in that] "conditions must be 'sufficiently extraordinary and egregious' in order to establish constructive discharge.").  In addition to looking at an employer's conduct and intent, a plaintiff must also show that she afforded her employer a reasonable opportunity to correct the intolerable condition before she terminated her employment.  *Id*.  Alternatively:

> If an employee quits without giving the employer a reasonable chance to resolve his claim, there has been no constructive discharge.

*Cosby v. Steak N Shake*, 804 F.3d 1242, 1246 (8th Cir. 2015). Relatedly, an employee has an affirmative obligation to be objectively "reasonable" including "an obligation not to assume the worst, and not to jump to conclusions too fast." *Anda v. Des Moines Bolt Supply, Inc.*, *supra*, 626 F.3d at 419.

51

Often a plaintiff asserting a constructive discharge claim relies on a culmination of actions by the employer – the identical actions that the plaintiff also alleges constituted a hostile work environment. Such was the case with Parker before the district court, *i.e.*, Parker's constructive discharge claim is premised on the same allegations raised in her hostile work environment claim. Such "dual" claims are referred to as "compound claims." As articulated by the Supreme Court:

> [A] constructive discharge . . . can be regarded as an aggravated case of sexual harassment or hostile work environment. . . . A hostile-environment constructive discharge claim entails something more: A plaintiff who advances such a compound claim must show working conditions so intolerable that a reasonable person would have felt compelled to resign.

*Pennsylvania State Police v. Suders*, 542 U.S. 129, 146-47, 124 S.Ct. 2342, 2354 (2004). When a plaintiff makes a compound claim and relies on the same evidence to support both a hostile work environment claim and a constructive discharge claim, this Court has concluded a finding that the plaintiff's allegations were "insufficient to establish a hostile work environment" also means that "her [constructive discharge] claim fails." *Wilkie v. Dept. of Health & Human Servs.*, 638 F.3d 944, 954 (8th Cir. 2011). In this case, the district court correctly found that both Parker's claim of a hostile work environment and her claim of a constructive discharge were fatally undermined by Parker's own admissions.

52

As previously discussed *supra*, just two and one-half months before her retirement, on June 20, 2018, Parker submitted an email to the RMA alleging a hostile work environment. Thereafter, the RMA initiated a hostile work environment investigation. However, just eight days later, on June 28, 2018, Parker sent an e-mail "rescinding" her request for a hostile work environment investigation by the USDA and expressly noting that, while she still had issues with her immediate supervisor (Ron Lundine), "[o]verall, [she was] comfortable and enjoy[ed] the employees and branch managers who rel[ied] on [her] for administrative support." App.[II], at 415; R.Doc. 49, at xv; App.[III], at 49-8, at 10-11. Rather than an intolerable workplace, by Parker's own admission, her workplace was overall comfortable and enjoyable.

In this case, for the same reasons that Parker could not establish that the conditions of her workplace were severe and pervasive, the district court correctly concluded that Parker could not meet the "higher evidentiary burden" for a constructive discharge. *Id. See also AuBuchon v. Geithner*, 743 F.3d 638, 645 (8th Cir. 2014) ("plaintiffs have a higher evidentiary burden to prove a constructive discharge than an adverse employment action"). [35]

---

[35]    *Cf. United States ex rel. Miller v. Weston Educational, Inc.*, 840 F.3d 494, 506-07 (8th Cir. 2016) ("A reasonable person would not find [plaintiff's] working conditions intolerable: She was not demoted, did not receive a reduction in salary, was not excluded from meetings, and did not lose any job responsibilities.").

53

# IX. Conclusion

For the reasons set out herein, appellee Thomas J. Vilsack, in his official capacity as the Secretary of Agriculture, respectfully requests that the Court affirm the final judgment of the district court that was entered on the bases of its prior entry of an order granting summary judgment to the USDA.

Respectfully submitted,

Teresa A. Moore
United States Attorney

By    */s/ Jeffrey P. Ray*

Jeffrey P. Ray
Deputy United States Attorney
Chief, Civil Division
Missouri Bar No. 35632
Eighth Circuit Admission No. 95-0380

Charles Evans Whittaker Courthouse
400 East 9th Street, Room 5510
Kansas City, Missouri 64106
(816) 426-3130
FAX: (816) 426-3165
Jeffrey.Ray@usdoj.gov

ATTORNEYS FOR APPELLEE THOMAS
J. VILSACK, SECRETARY OF THE
DEPARTMENT OF AGRICULTURE

54

# X. Certificate of compliance

Pursuant to 8TH CIR. R. APP. P. 28A(h)(1)-(3), and FED. R. APP. P. 28(a)(10), 32(a)(5)(a), 32(a)(7)(B)(i), 32(g)(1), the undersigned Deputy United States Attorney hereby certifies that the forgoing BRIEF FOR APPELLEE complies with the Court's technical requirements for electronic versions of appellate briefs, including complying with the applicable type-volume limitation in that:

The BRIEF FOR APPELLEE was prepared utilizing the Word application on Microsoft Office 365 software,

The electronic version of the BRIEF FOR APPELLEE is in a single document file, has been scanned for viruses and is virus-free, is in Portable Document Format (".*pdf*") and has been converted to .*pdf* document from the original Word file using Adobe Acrobat Pro DC software,

The BRIEF FOR APPELLEE contains 12,757 words[36] as verified with the Word application on Microsoft Office 365 software, and

The BRIEF FOR APPELLEE was prepared utilizing 14-point or larger proportionally spaced "Times New Roman" typeface.

_/s/ Jeffrey P. Ray_
Jeffrey P. Ray
Deputy United States Attorney

---

[36] The word count excludes the corporate disclosure statement, table of contents, table of citations, statement with respect to oral argument, and certifications of counsel. FED. R. APP. P. 32(f).

Appellate Case: 23-3404     Page: 66     Date Filed: 06/20/2024 Entry ID: 5404987

## XI.   Certification of electronic filing of the BRIEF FOR APPELLEE

Pursuant to 8TH CIR. R. APP. P. 28A(a), the undersigned Deputy United States Attorney hereby certifies an electronic version of the foregoing BRIEF FOR APPELLEE was filed with Clerk of the Court using the Court's CM/ECF system on this 17th day of June, 2024.

*/s/ Jeffrey P. Ray*     
Jeffrey P. Ray
Deputy United States Attorney

## XII. Certification of mailing of paper copies of the BRIEF FOR APPELLEE

The undersigned Deputy United States Attorney hereby certifies that ten (10) true and correct paper copies the foregoing BRIEF FOR APPELLEE were sent to the office of the Clerk of the Court in compliance with the provisions of FED. R. APP. P. 25(a)(2)(A)(i) and 8TH CIR. R. APP. P. 28A(d), and that one true and correct paper copy of the foregoing BRIEF FOR APPELLEE was placed in the United States first class mail, postage prepaid, addressed to:

Rebecca Randles
RANDLES & MATA
851 NW 45th Street, Suite 310
Kansas City, MO. 64116

ATTORNEYS FOR APPELLANT
DEIDRE PARKER

on this _____ day of June, 2024.[37]

_____
Jeffrey P. Ray
Deputy United States Attorney

---

[37]     The mailings of the paper copies of the BRIEF FOR APPELLEE to the appellant and the Clerk of the Court are being completed within five days of the receipt of notice from the Clerk of the Court that the electronic version of the BRIEF FOR APPELLEE has been reviewed and filed. 8TH CIR. R. APP. P. 28A(d).

Appellate Case: 23-3404     Page: 68     Date Filed: 06/20/2024 Entry ID: 5404987